# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Civil Action No. 4:24-cv-1607 |
| TEHUM CARE SERVICES, INC.,[1] | Chapter 11 Case No. 23-90086 (CML) |
| Debtor. | |

## JOINT RESPONSE OF THE DEBTOR AND
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
## IN OPPOSITION TO MOTION FOR (I) LEAVE OF THE COURT
## TO APPEAL THE BANKRUPTCY COURT'S ORDER DENYING THE
## MOTION TO DISMISS AND (II) CERTIFICATION OF DIRECT APPEAL
## TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Appellees Tehum Care Services, Inc., the above-captioned debtor and debtor in possession (the "Debtor") and the Official Committee of Unsecured Creditors (the "UCC"), file this Joint Response (this "Response") to the *Notice of Appeal* [Docket No. 2] (the "NOA") and the *Motion for (I) Leave of the Court to Appeal the Bankruptcy Court's Order Denying the Motion Dismiss and (II) Certification of Direct Appeal to the United States Court of Appeals for the Fifth Circuit* [Bankruptcy Docket No. 1525-2][2] (the "Motion" and together with the NOA, the "Motion for Leave"),[3] filed by Appellants the Committee of Tort Claimants (the "TCC"), Elizabeth Frederick, Paris Morgan, Aanda Slocum, and LaTanda Smith (together, the "Movants"), regarding the

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

[2] For clarity, where references are made to filings in the underlying bankruptcy action, Case No. 23-90086, the docket entry will be referred to as "Bankruptcy Docket No."

[3] While Movants did not separately file or docket their actual Motion—instead simply attaching the same as an exhibit to the NOA—in the interest of judicial economy and out of an abundance of caution, the Debtor and the UCC treat the Motion as ripe for response. *See also* Fed. R. Bankr. P. 8004(d) (stating that if a notice of appeal is filed but a motion for leave to appeal is not "included," this Court may treat the notice of appeal as itself a motion for leave to appeal).

Bankruptcy Court's order [Bankruptcy Docket No. 1506] (the "Order") denying the *Motion of the Official Committee of Tort Claimants and Certain Tort Claimants for Structured Dismissal of Chapter 11 Case* [Bankruptcy Docket No. 1260] (the "Motion to Dismiss").

### Preliminary Statement

1. The Court should deny the Motion: leave to appeal the Bankruptcy Court's well-reasoned Order denying the Motion to Dismiss is not warranted and the Movants cannot establish the appropriate legal or factual predicates to certify the Order for direct appeal to the Fifth Circuit.

2. The Movants ask this Court to authorize an interlocutory appeal so they can challenge, among other things, the Bankruptcy Court's factual findings and Fifth Circuit black-letter law. Not only is this unsupported by the record and precedent, but an appeal at this juncture would not materially advance the underlying chapter 11 case.

3. Movants proffer five questions (the "Questions") for appeal. *See* Motion ¶ 85(A–E). Each Question is hyperbolic, misstates the findings and conclusions in the Bankruptcy Court's oral ruling and the Order (if it references the Order at all) and, as posed, would neither serve to move the chapter 11 case forward nor meet the stringent requirements for an interlocutory appeal to this Court or the Fifth Circuit.

4. Moreover, the sensationalized and unfounded implications in the Questions are devoid of substance. Instead, as expressly found by the Bankruptcy Court after a lengthy four-day trial, the Debtor's chapter 11 case was not filed in bad faith, for an improper purpose, or in any way to "upend the Bankruptcy Code's objectives and priority scheme." As also found by the Bankruptcy Court, the Debtor has spent the last fifteen months attempting to negotiate good faith settlements so it can pay creditors in accordance with the Bankruptcy Code. To do so, it has *twice* negotiated for tens of millions of dollars of *new* money being brought into the estate for the benefit

of creditors. The Movants' position and views about this case (as reflected in the Motion) are not a valid reason to dismiss this case, authorize an interlocutory appeal, or certify such directly to the Fifth Circuit, especially when the determinations by the Bankruptcy Court were almost entirely fact-based and Fifth Circuit law is well-established on issues of dismissal for alleged bad faith.

5. Indeed, while the Debtor and the UCC dispute much of the twenty-two pages of embroidered background in the Motion, they do not believe the Motion or this Response are the appropriate forum to re-litigate factual disputes or disagreements and will not do so.[4] *See In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012) (interlocutory appeals should be rarely granted and not for the purpose of determining factual disputes).

6. This Court should deny leave to appeal because Movants cannot meet the applicable legal standard.

7. Similarly, this Court should deny direct appeal as none of the elements of 28 U.S.C. § 158(d)(2)(A)(i)-(iii) have been, or can be, met.

**Background**

8. On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 2, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the UCC in accordance with

---

[4] Not only are many of the factual allegations in the Motion inaccurate and inflammatory, Movants misrepresent the underlying motions and procedural posture under consideration by the Bankruptcy Court. These matters are not relevant to questions of an interlocutory appeal or certification for direct appeal to the Fifth Circuit. As a result, the Debtor and the UCC limit this response to only those facts which impact the legal tests for whether interlocutory appeal and certification for direct appeal are appropriate.

That being said, the Debtor specifically objects to the Movants' allegation that the Debtor is or was created with the intention of being an "abyss." *See* Motion at ¶ 5 & n.2. Nothing in the record supports this allegation. Further, "abyss" is—at best—a speculative translation of "tehum" from Hebrew, which the Debtor disputes.

3

4870-5136-5051

section 1102 of the Bankruptcy Code [Bankruptcy Docket No. 77], as amended on March 6, 2023 [Bankruptcy Docket No. 145].

9. On May 22, 2023, the Bankruptcy Court entered its *Stipulation and Agreed Order Regarding Appointment of a Mediator and Governing Related Mediation Procedures* [Bankruptcy Docket No. 603]. In accordance with that order, the Settlement Parties,[5] the Debtor, and the UCC participated in a three-day mediation, held on August 21–23, 2023 (the "First Global Mediation").

10. Following the First Global Mediation, the Debtor and the UCC, as joint plan proponents, filed a chapter 11 plan (as amended at Bankruptcy Docket No. 1072) incorporating the resolution reached at the First Global Mediation and a disclosure statement in support of the plan (as amended at Bankruptcy Docket No. 1071, the "Disclosure Statement").

11. On June 30, 2023, various creditors filed a motion for appointment of a chapter 11 trustee [Bankruptcy Docket No. 731], which the Bankruptcy Court denied after a full-day evidentiary hearing on September 8, 2023. Bankruptcy Docket No. 932.

12. In response to concerns raised by the Court and U.S. Trustee regarding the First Global Mediation,[6] the Settlement Parties, the Debtor, and the UCC agreed to conduct a second global mediation with a different mediator. On November 15, 2023, the Bankruptcy Court entered its *Amended Stipulation and Agreed Order Regarding Appointment of Judge Christopher S. Sontchi (ret.) as Mediator and Governing Related Mediation Procedures* [Bankruptcy Docket

---

[5] YesCare Corp. and its wholly owned subsidiaries (including CHS TX, Inc.), M2 LoanCo, LLC, M2 HoldCo, LLC, Perigrove 1018, LLC, Perigrove, LLC, PharmaCorr LLC, and Geneva Consulting, LLC (collectively, the "Settlement Parties").

[6] *See Objection of the United States Trustee to Joint Emergency Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Joint Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* ¶ 2 [Bankruptcy Docket No. 1022].

4870-5136-5051

No. 1109] (the "Second Global Mediation Order"), under which the Settlement Parties, the Debtor, and the UCC agreed to participate in a second global mediation in December 2023.

13. However, on November 20, 2023, more than nine months into the bankruptcy case and after two prior requests had been denied, and before commencement of the second global mediation, the U.S. Trustee appointed the TCC.

14. As a result of the TCC's appointment, and upon agreement of all parties, on November 29, 2023, the Bankruptcy Court amended its Second Mediation Order to include the TCC and rescheduled the second global mediation for the week of December 11, 2023 [Bankruptcy Docket No. 1158] (the "Amended Second Mediation Order").

15. In accordance with the Amended Second Mediation Order, the Debtor, the UCC, and the TCC attended a mediation with the Settlement Parties on December 14, 2023 (the "Second Global Mediation," and together with the First Global Mediation, the "Global Mediations"). As a result of the Second Global Mediation, the Debtor and the UCC reached a settlement with the Settlement Parties and presented it in their *Joint Motion for Entry of an Order (I) Authorizing and Approving the Settlement by and among the Debtor, the UCC, and the Parties to the Settlement Agreement and (II) Granting Related Relief* [Bankruptcy Docket No. 1259] (the "Settlement Motion").

16. On the same day that the Debtor and UCC filed the Settlement Motion, the TCC filed its Motion to Dismiss [Bankruptcy Docket No. 1506].

17. The Bankruptcy Court held a combined evidentiary hearing across four days in March 2024 (the "Hearing") on both the Settlement Motion and the Motion to Dismiss. On April 11, 2024, the Bankruptcy Court issued its oral ruling denying both motions. The Bankruptcy Court entered its Order on the same day. *See* Bankruptcy Docket Nos. 1505 (Order), 1508 (Courtroom minutes) and 1513 (transcript regarding oral ruling).

5

18. The Questions presented by the Movants in their NOA relate to those portions of the Order which relate to the Motion to Dismiss. Movants do not appear to dispute any factual findings or conclusions of law related to the Settlement Motion.

19. On May 6, 2024, the Debtor, UCC, and TCC commenced a *third* mediation (the "Third Global Mediation") with Judge Sontchi, which remains ongoing.

## Argument and Authorities

### I. The Court should deny leave to appeal.

20. Movants proffer five Questions they urge the Court to certify for appeal. *See* Motion ¶ 85(A–E). But none of them satisfy the elements required for leave to appeal an interlocutory order, let alone for certification of a direct appeal to the Fifth Circuit. Not only do Movants fail to establish that the Order is "final," and therefore entitled to automatic appeal, but they cannot satisfy the standards for discretionary interlocutory appeals of nonfinal orders because each Question presented is inherently fact bound, fails to present substantial question of law, and would not materially advance the case. Accordingly, this Court should deny leave to appeal.

#### A. The Order is not a final order—therefore, Movants must satisfy the standard for an interlocutory appeal.

21. Movants seek a determination that the Order denying the Motion to Dismiss is a final order under 28 U.S.C. § 158(a)(1) and therefore entitled to automatic appeal to this Court. It is not.

22. Section 158 of Title 28, United States Code, governs appeals from the bankruptcy court. It grants the district court jurisdiction to hear appeals from "final judgments, orders, and decrees, and, with leave of court, from interlocutory orders and decrees." While the Fifth Circuit "has long rejected adoption of a rigid rule that a bankruptcy case can only be appealed as a single judicial unit at the end of the entire bankruptcy proceeding," *Bartee v. Tara Colony Homeowners*

*Ass'n (In re Bartee)*, 212 F.3d 277, 282 (5th Cir. 2000), to be considered "final" under section 158 the order must be either a "final determination of the rights of the parties to secure the relief they seek" or a final disposition of a "discrete dispute within the larger bankruptcy case." *Id*.

23. The Fifth Circuit has repeatedly determined that an order denying a motion to dismiss a bankruptcy case is not a final order. *See, e.g., Promenade Nat'l Bank v. Phillips (In re Phillips)*, 844 F.2d 230, 234-35 (5th Cir. 1988); *Path-Science Labs., Inc. v. Greene Cnty. Hosp. (In re Greene Cnty. Hosp.)*, 835 F.2d 589, 590-91 (5th Cir. 1988) ("We are convinced that a bankruptcy court's determination that it does have subject matter jurisdiction over a case is not a final order."); *AET Inc.*, 2007 WL 1644060, at *3. This comports with non-bankruptcy precedent. *See Catlin v. United States*, 324 U.S. 229, 236 (1945) ("But denial of a motion to dismiss, even when the motion is on jurisdictional grounds, is not immediately reviewable."); *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F. 4th 442, 448 (5th Cir. 2022) ("Because an order denying a motion to dismiss is not a final decision, it 'ordinarily does not constitute an immediately appealable order.' ").[7]

24. The Fifth Circuit has not recognized any exceptions for specific theories of motions to dismiss. It does not, for instance, treat orders denying motions to dismiss a bankruptcy case on jurisdictional grounds as different from those filed on other bases, including those based on allegations of a bad-faith filing. Indeed, Movants have identified no rationale for this Court to disregard Fifth Circuit precedent and treat the Order as "final" for purposes of section 158(a)(1). *See discussion in* Motion ¶¶ 87–89 (failing to identify any Fifth Circuit precedent treating orders

---

[7] *Planned Parenthood* also addressed the "collateral order doctrine," which allows appellate courts to hear interlocutory appeals where, among other obligations, the issue would be "effectively unreviewable on appeal from a final judgment." *See id*. Movants have identified no "collateral order" issues that would not be reviewable upon a final judgment, and indeed have reiterated that they intend to file additional appeals to an Article III court if they do not prevail on a future, as yet unfiled, plan objection. Motion ¶ 104.

denying motions to dismiss as final). Likewise, there is no "discrete issue" of which the Order finally disposes. Therefore, the Order is not final and Movants have no right to appeal.

    **B.**  **Movants cannot satisfy the standard for an interlocutory appeal.**

  25.  Section 158 also grants the district courts discretion to hear appeals from interlocutory orders of bankruptcy courts. *See* 28 U.S.C. § 158(a)(3) ("The district courts of the United States shall have jurisdiction to hear appeals . . . (3) with leave of the court, from other interlocutory orders and decrees"). "When determining whether to grant leave to appeal an interlocutory order of a bankruptcy court pursuant to 28 U.S.C. § 158(a)(3), district courts within the Fifth Circuit generally use the standard applied under 28 U.S.C. § 1292(b)."[8] *In re Lopez*, No. 7:15-cv-526, 2016 WL 4546884, at *1 (S.D. Tex. Sept. 1, 2016). Section 1292(b) governs interlocutory appeals from district courts to the courts of appeals and permits such appeals where a district court believes there to be (1) a controlling question of law as to which there is (2) a substantial ground for difference of opinion and (3) believes an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id*. *All three* of the statutory criteria must be met before an interlocutory appeal is proper. *See Mason v. Dillon Invs., LLC*, Civ. Action No. 4:23-CV-319, 2023 WL 6702602, at *15 (E.D. Tex. Oct. 11, 2023) (slip op.); *see also Arparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981) (applying 28 U.S.C. § 1292(b)).

  26.  "Interlocutory bankruptcy appeals should be limited to cases presenting exceptional circumstances." *In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012) (string citation omitted). "The Fifth Circuit disfavors interlocutory appeals and leave to appeal is sparingly granted." *In re*

---

[8] *See In re Ichinose,* 946 F.2d 1169, 1177 (5th Cir. 1991) (assuming without deciding the § 1292(b) test applies); *In re Red River Energy, Inc.*, 415 B.R. 280, 284 (S.D. Tex. 2009) ("The Fifth Circuit has not expressly adopted criteria for district courts to use when determining whether to grant leave to appeal an interlocutory order of a bankruptcy court under 28 U.S.C. § 158(a)(3) . . .").

*Highland Cap. Mgmt., LP*, Civil Action No. 3:21-CV-0132-E, 2021 WL 3772690, at *2 (N.D. Tex. Feb. 11, 2021) (cleaned up). The movant "bears the burden of establishing such exceptional circumstances." *In re Royce Homes LP*, 466 B.R. at 94; *see also Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional."). Movants cannot meet that burden here.

### 1. Movants do not identify a controlling question of law upon which there is a substantial ground for disagreement.

27. Movants cannot demonstrate that the Questions both (a) are controlling questions of law, (b) for which there is a substantial ground for disagreement. "In the interlocutory appeal context, '[t]he question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Royce Homes*, 466 B.R. at 94; *see also Smith v. AET Inc., Ltd.*, Civil Action Nos. C-07-123, -124, -126, 2007 WL 1644060, at *6 (S.D. Tex. June 4, 2007) (finding no controlling issue of law because "the predominant issues are *factual*" (emphasis in original)); *Clark-Dietz*, 702 F.2d at 69 (stating interlocutory appeals are inappropriate when questions presented are not particularly difficult or legal questions are foreclosed by fact findings).

28. Courts find a substantial ground for difference of opinion when, for example, a trial court enters a ruling that appears contrary to the rulings of all Courts of Appeals that have reached the issue. *See Enviro-Lite Sols., LLC v. Edinburg Consol. Ind. Sch. Dist.*, 2021 WL 3832818, at *6 (S. D. Tex. Feb. 24, 2021). "The threshold for establishing a substantial ground for difference of opinion is higher than mere disagreement or even the existence of some contrary authority." *Coates v. Brazoria Cnty.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013). Likewise, "[i]t is simply not enough for interlocutory review that the order for which appeal is sought presents a difficult ruling; nor is it sufficient that the movant can demonstrate a lack of authority on the issue." *Red River*,

9
4870-5136-5051

415 B.R. at 285 (quoting *Colonial Bank v. Freeman (In re Pacific Forest Products Corp.)*, 335 B.R. 910, 922 (S.D. Fla. 2005)).

29. Each Question for which Movants seek appeal and certification fails to satisfy the requirement that they be one of "pure law" or misstates the law or factual circumstances in this case. *See* Motion ¶ 85.[9] Further, to the extent a legal question is posed, Movants fail to establish a "substantial ground" for disagreement that warrants early resolution, or even explain to the Court how sections 158(a)(3) or 1292(b) apply to each. The Debtor and the UCC address the factual and legal reasons each Question should be rejected below.

> i. <u>Whether a Bankruptcy Court has the authority under the Bankruptcy Code and the Constitution to discharge a non-debtor of its tort liability.</u>

30. As phrased, this first Question asks this Court to enter an advisory opinion about non-debtor tort liability, where (a) no non-debtor releases exist or have been approved, (b) no discharges or releases are the subject the Order, and (c) there are no discharges or releases requested or proposed in *any* pending pleading (let alone the now-denied Motion to Dismiss) for the Court to consider. The Order did nothing more than deny the Motion to Dismiss based on the facts of the case.[10] Alternatively, even if the Bankruptcy Court's Order somehow ruled on third party-releases—which it does not[11]—determining whether any third-party releases would constitute "discharges" of "tort liability" is a mixed question of fact and law that is inappropriate to resolve on interlocutory appeal.

---

[9] The Questions presented by Movants vary slightly from section-to-section of the Motion. *Compare* Motion ¶ 85 with ¶¶ 92-93. For clarity, the Debtor and the UCC respond to the Questions as posed in paragraph 85 of the Motion.

[10] The Bankruptcy Court also denied the Settlement Motion, meaning that the underlying chapter 11 case is in the same procedural place it was at the time the TCC was appointed in November 2023: the bankruptcy case is pending with no existing settlement.

[11] While the Question uses the word "discharge," that word does not appear in the Bankruptcy Court's oral ruling or in the Order itself.

31. First, while the Settlement Motion originally contained certain releases, which releases were modified during trial, the Bankruptcy Court denied the Settlement Motion. *See* Bankruptcy Docket Nos. 1525-8 at 16:11-12 ("And after carefully considering the settlement, it is denied.") and 1505 (order denying Settlement Motion). Consequently, there are no releases (or discharges) that have been approved, are currently proposed, or that are applicable in any circumstance in the chapter 11 case. This Question, therefore, has no tether to the Motion to Dismiss or the Order.

32. Second, even if this Question were applicable—which is it not—it contains mixed questions of fact and law. While Movants characterize the previous plan and settlement releases as "discharges" of "tort liability," the referenced plan and settlement releases are (i) defunct and no longer pertinent and (ii) not part of the Order or the Bankruptcy Court's ruling on the Motion to Dismiss.

> ii. <u>Whether the tort claims arising from Corizon Health's misconduct, as asserted against YesCare and its non-debtor affiliates and insiders, are the property of Tehum's estate under the Bankruptcy Code, and whether such a construction of the Bankruptcy Code would violate the Fifth Amendment.</u>

33. This second Question fails to meet the Section 158(a)(3) standards for the same reasons as the first: (1) there is no finding in the Order or the Bankruptcy Court's oral ruling in any way relating to *any* claims asserted by or against the estate or any third party—the Bankruptcy Court simply denied the Motion to Dismiss on the basis that dismissal of the chapter 11 case was not appropriate and the chapter 11 filing is not a misuse of the Bankruptcy Code; (2) despite that, identifying which claims in the bankruptcy case are "tort claims" is a fact question; and also (3) the Movants forfeited any Fifth Amendment argument by not asserting it in the Bankruptcy Court and cannot revive that right on a motion for interlocutory appeal.

34. The Movants elected not to brief, or in any way substantively raise or address, Fifth Amendment issues in the first instance, merely making a glancing reference in a footnote to section 541(a) of the Bankruptcy Code as potentially violating the Fifth Amendment, without citing any authority. *See* Motion to Dismiss at 17 n.12. The sum of the Movants' briefing in the Motion to Dismiss states: "The TCC raises and reserves the right to argue that section 541(a) violates the Fifth and Seventh Amendments to the extent that it means that such claims are the Debtor's property." And despite four days of hearings, Movants presented *no arguments* regarding alleged Fifth Amendment violations. *See* Bankruptcy Docket Nos. 1525-4, -5, -6, and -7. Their strategic choice not to raise this issue in the lower court forfeited their argument and their opportunity to appeal on that basis.

    iii. <u>Whether a chapter 11 case filed in an effort to gain control over and settle claims asserted against non-debtor insiders and affiliates is filed in bad faith.</u>

    iv. <u>Whether a chapter 11 case filed after a divisional merger that assigns tort liabilities to a non-operational company, with no employees and no assets to sustain a going-concern business, meets the Bankruptcy Code's good-faith requirement.</u>

    v. <u>Whether the Bankruptcy Court erred in denying Movants' Motion to Dismiss.</u>

35. The third, fourth, and fifth Questions share a common mischaracterization of the facts presented to the Bankruptcy Court, and the findings and conclusions in the Order, and are therefore addressed together. Ultimately, each is a reframing of one question: *Should this Court set aside the Bankruptcy Court's factual finding denying Movants' arguments that the Debtor's chapter 11 case was filed in bad faith?* This is a purely factual determination, and the answer is "No."

36. As was the case in *AET Inc.*, the arguments Movants advance in favor of reconsideration of the Bankruptcy Court's Order are predominantly factual, rather than legal, and necessarily involve a review of the factual record. As a result, these Questions, too, cannot pass muster under section 153(a)(3). *See AET Inc.*, 2007 WL 1644060, at *6.

37. But even if Movants posited a purely legal question and identified a misapplication of law, they ask the Court to take the analysis one step further by proceeding to apply the law to the Bankruptcy Court's factual determinations and decide it erred by denying the Motion to Dismiss. This is a bridge too far because it would require the Court to engage in the application of law to fact. *See Enviro-Lite Sols., LLC v. Edinburg Consol. Ind. Sch. Dist.*, 2021 WL 3832818, at * 6 (S.D. Tex. Feb. 24, 2021) (citing *La. Patients' Comp. Fund Oversight Bd. V. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005)).

38. In the Motion to Dismiss, Movants argued that the Bankruptcy Court should dismiss the case for a variety of *factual* reasons allegedly constituting "cause" or "bad faith" including (a) administrative insolvency; (b) allegedly "consummating a fraud"; (c) that the bankruptcy was filed as a litigation tactic; and (d) to support the Movants' view of what is in the best interest of creditors. Motion to Dismiss ¶¶ 166–73. Not only does the Notice fail to identify which theory the Movants believe the Bankruptcy Court got wrong, but for this Court to determine whether the Bankruptcy Court erred in considering *any* of those theories, this Court would need to undertake an extensive factual analysis. *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities.").

39. The Bankruptcy Court heard four full days of testimony, during which the Movants were permitted to offer any evidence they believed supported their arguments that the chapter 11 case should be dismissed. *See* Bankruptcy Docket Nos. 1525-4, 1525-5, 1525-6, and 1525-7 (hundreds of pages of transcripts from four-day Hearing). Nevertheless, after hearing all witnesses testifying and reviewing dozens of documents admitted into evidence, the Bankruptcy Court made the factual determination that the Debtor filed bankruptcy for a valid bankruptcy purpose and did not act in bad faith. *See* Bankruptcy Docket No. 1525-8 at 33:25-35:6. For this Court to accept the Movants' re-characterization of the issues raised by the Order would reject all factual considerations and findings of the Bankruptcy Court and exceed the authority for interlocutory appeals under section 158(a)(3). *See AET Inc.*, 2007 WL 1644060, at *6.

40. The authorities on which Movants rely demonstrate the error of their logic. They propose this Court enter a ruling that follows the holdings in either the Fifth Circuit's decision in *Antelope* or the Third Circuit's decision in *LTL Management*. *See* Motion ¶ 103 (citing *In re Antelope Tech., Inc.*, 431 F. App'x 272 (5th Cir. 2011) and *In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir. 2023)). Neither case is remotely factually similar to the Debtor's case, and neither case was decided on a similar interlocutory appeal. *See Red River*, 415 B.R. at 285 (stating that the movant must demonstrate a court has interpreted the relevant legal principle differently under substantially similar circumstances).

41. The factual and procedural posture in *Antelope* is entirely different from this case and was therefore subject to a different standard of review. *Antelope* was not decided on interlocutory appeal, but after both the bankruptcy court dismissed the petition and the district court affirmed that dismissal. As a result, the Fifth Circuit reviewed the bankruptcy court's findings of fact for clear error. *Antelope*, 431 F. App'x at 273 (standard of review). After

14

examining the "thorough opinion" and detailed factual findings, the Fifth Circuit found that bankruptcy court's finding that the case was filed for an improper purpose was not clearly erroneous. Its opinion was fact-bound to the evidence reviewed by the lower courts. Unlike a case with a final order granting dismissal, this Court cannot review the factual record on interlocutory appeal and *Antelope* is, therefore, inapposite.

42. Likewise, *LTL Management*—an out-of-circuit opinion—also agreed that whether a bankruptcy petition is filed in good faith is an "ultimate fact" and went on to conduct a detailed evaluation of both the debtor's financial condition, including assets, liabilities, and funding backstops. *See LTL Mgmt.*, 64 F.4th at 103, 105-110. This type of analysis is not available on interlocutory appeal in the Fifth Circuit. *See Enviro-Lite Sols.*, 2021 WL 3832818, at * 6; *Royce Homes*, 466 B.R. at 94; *see also AET Inc.*, 2007 WL 1644060, at *6; *Clark-Dietz*, 702 F.2d at 69. Accordingly, at this stage in the proceedings the Court cannot follow either *Antelope* or *LTL Management*. Further, as discussed below, the Third Circuit and Fifth Circuit have reached different conclusions on the appropriate standard of review for interlocutory rulings on bankruptcy court motions to dismiss. *See infra* ¶ 49. There is no reason for this Court to split from binding Fifth Circuit precedent and take an immediate appeal from an interlocutory order.

**2. Immediate Appeal Does Not Materially Advance the Case.**

43. Interlocutory appeals are only appropriate when answering the appellate question "will materially advance, not retard, ultimate termination of the litigation." *Clark-Dietz*, 702 F.2d at 69 (interpreting section 1292(b)). Even when an immediate appeal may save the bankruptcy court time if reversed, it is not appropriate to permit an immediate appeal if there will be a risk of delayed judgment that could penalize a party. *See id*.

4870-5136-5051

44. The underlying chapter 11 case is continuing to move towards resolution. Just this week the Debtor, the UCC, the TCC and the Settlement Parties participated in a third global mediation (which remains on-going) intended to bring this case towards a settlement, a confirmable chapter 11 plan, and ultimately, distributions to creditors. Granting leave for an interlocutory appeal would only delay resolution of this case and harm creditors. Moreover, there is a high degree of likelihood that the Questions presented by the Motion will be either modified or moot if the parties are able to reach a mediated resolution. There is no reason this Court, or the Fifth Circuit, should expend judicial resources to resolve this interlocutory appeal when the Movants have already asserted they may move to dismiss again. Motion ¶ 104.

45. Further, because each of the Questions presented (with the exception of the fifth Question, which is—itself—entirely factual, *see supra* ¶¶ 35–42) includes factual presumptions that were not reflected in findings within the Order, the Questions will not materially advance the case. Appeal of any factual determinations must come following a final order, at which time the Court will be permitted to review fulsome briefing from a thorough factual record. The case is not materially advanced by this Court prematurely embarking on a review of the factual record today.

C. **The Court should deny Certification for direct appeal to the Fifth Circuit.**

46. As the Movants recognize, the standard for granting interlocutory review of an appeal from a Bankruptcy Court is similar to the standard for certifying a direct appeal to the Fifth Circuit. *See* Motion ¶¶ 105–06 (citing 28 U.S.C. § 158(d)(2)(A)-(B)).

47. To directly appeal from the Bankruptcy Court to the Fifth Circuit, this Court must certify one of three things: (i) that there is no controlling decision from the Supreme Court or Fifth Circuit or the case involves a matter of public importance; (ii) there are conflicting precedents; or (iii) an immediate appeal may materially advance the bankruptcy proceeding's progress. 28 U.S.C.

4870-5136-5051

§ 158(d)(2)(A)(i)-(iii). For the reasons stated above, the Movants cannot meet their burden and this Court should not certify this matter for direct appeal.

48. In the first instance, "[b]ecause interlocutory appeals interfere with the overriding goal of the bankruptcy system, expedition resolution of pressing economic difficulties, they are not favored." *In re Hunt Int'l Res. Corp.*, 57 B.R. 371, 372 (N.D. Tex. 1985) (cleaned up) (citing *Katchen v. Landy*, 382 U.S. 328 (1966); *In re Durensky*, 519 F.2d 1024, 1028 (5th Cir. 1975)).

49. Moreover, while Movants encourage the Court to follow the Third Circuit's decision in *LTL Management*, there are critical distinctions, including the appropriate standard of review of motions to dismiss. Unlike the Fifth Circuit, the Third Circuit reviews denials of motions to dismiss chapter 11 cases for clearly erroneous findings of fact, in addition to errant conclusions of law. *Compare LTL Mgmt.*, 64 F. 4th at 99, *with Enviro-Lite Sols.*, 2021 WL 3832818, at * 6. Movants have not cited any Fifth Circuit precedent adopting that standard of review. Nor have they demonstrated a reason to depart from this Circuit's precedent.

50. Further, Movants argue that the Court should certify a direct appeal because (a) this case involves a debtor that was once the subject of a divisional merger and (b) the Movants disagree that derivative causes of action, including successor liability and alter ego, are property of the estate. However, unlike the pure questions of law presented to the Fifth Circuit in prior interlocutory appeals, *see, e.g. In re OCA, Inc.*, 552 F.3d 413, 419 (5th Cir. 2008) (questions presented included, "Are corporations 'persons' for purposes of Section 251.003(a)(4)?" and "Are the BSAs illegal?"),[12] the Questions Movants ask this Court to certify each involve numerous

---

[12] While some questions presented in *OCA* involved a review of a specific contract, interpretation of contracts is a question of law not fact under Texas law. *See OCA*, 552 F.3d at 418 ("Since this is an appeal from an interlocutory order from the bankruptcy court regarding a question of law on which there is no controlling precedent, we will treat this appeal essentially as we treat certified questions from district courts.").

findings or presumptions of fact. *See supra* ¶¶ 3–42. Movants have identified no precedent permitting interlocutory review of factual conclusions—nor presented any Questions identifying *specific* factual findings they believe the Bankruptcy Court got wrong.[13] Instead, they want a holistic do-over at the appellate court level, rather than waiting for review of a final order.

51. Finally, Movants' pleas in favor of appeal regarding hypothetical future actions taken by a non-debtor (YesCare) or hypothetical future litigants should not sway the Court. These are policy questions for Congress, not appropriate grounds for interlocutory appeal of a denied interlocutory motion to dismiss in a chapter 11 case. Moreover, none of these policy considerations is expressly raised in the Questions and are therefore forfeited.

52. Because Movants cannot satisfy the requirements of section 158(d), the Court should deny certification of any issues to the Fifth Circuit.

## Conclusion

For the foregoing reasons, the Debtor and the UCC respectfully request that the Court enter the Order denying appellate review of the Questions and refusing to certify the Questions to the Fifth Circuit for direct review.

---

[13] Even if Movants identified an error in factual findings, the first two Questions are not relevant to the Bankruptcy Court's determinations denying the Motion to Dismiss. And the third, fourth, and fifth Questions, while related to the Motion to Dismiss, each present a factual determination which is improper for appellate review.

18

Respectfully submitted this 8th day of May, 2024.

| | |
|---|---|
| */s/ Jason S. Brookner* | */s/ Nick Zluticky (with permission)* |
| **GRAY REED** | **STINSON LLP** |
| Jason S. Brookner (TX Bar No. 24033684) | Nicholas Zluticky (SDTX Bar No. 3846893) |
| Aaron M. Kaufman (TX Bar No. 24060067) | Zachary Hemenway (SDTX Bar No. 3856801) |
| Lydia R. Webb (TX Bar No. 24083758) | 1201 Walnut, Suite 2900 |
| Amber M. Carson (TX Bar No. 24075610) | Kansas City, Missouri 64106 |
| 1300 Post Oak Boulevard, Suite 2000 | Telephone: (816) 842-8600 |
| Houston, Texas 77056 | Email: nicholas.zluticky@stinson.com |
| Telephone: (713) 986-7126 | zachary.hemenway@stinson.com |
| Facsimile: (713) 986-5966 | |
| Email: jbrookner@grayreed.com | *Counsel to the Official Unsecured Creditors'* |
| akaufman@grayreed.com | *Committee* |
| lwebb@grayreed.com | |
| acarson@grayreed.com | |

*Counsel to the Debtor
and Debtor in Possession*

## Certificate of Service

I certify that on May 8, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas, and via email (where available) on counsel to the TCC and the other Movants.

>                    */s/ Jason S. Brookner*
>                    Jason S. Brookner