# IN THE UNITED STATES COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>TEHUM CARE SERVICES, INC. et al<br><br>*Debtor*<br><br>TEHUM CARE SERVICES, INC. et al<br><br>*Appellee* | Civil Case No. 4:24-cv-01607<br><br>Bankruptcy Case No. 23-bk-90086 |

## STATEMENT OF *AMICI CURIAE* IN SUPPORT OF REQUEST FOR INTERLOCUTORY REVIEW

Martin Woodward
Kitner Woodward PLLC
13101 Preston Road, Suite 110
Dallas, TX 75240
(214) 443-4300
martin@kitnerwoodward.com

Jaqueline Aranda Osorno*
Public Justice
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net
*pro hac vice pending*

*Counsel for Amici Curiae*

# CORPORATE DISCLOSURE STATEMENT

*Amici* Center for Constitutional Rights, Public Justice, Rights Behind Bars, Roderick & Solange MacArthur Justice Center, Southern Center for Human Rights, UC Berkeley Center for Consumer Law & Economic Justice, and Worth Rises are all nonprofit organizations. None have a parent company, and thus no publicly held company has 10% or greater ownership interest in any of the organizations.

# INTRODUCTION

This case implicates the rights of and the remedies available to hundreds—if not thousands—of incarcerated people across the country who have been harmed by Corizon Health Inc. ("Corizon"), the Debtor's corporate predecessor. Since its formation in 2011, Corizon maximized profits by systematically providing substandard medical care—and sometimes no care at all—subjecting incarcerated people to serious harm and death. Corizon's pattern of neglect and deliberate indifference to the lives of incarcerated people is well-documented.[1]

---

[1] S*ee, e.g.*, *Jensen v. Shinn*, 609 F. Supp. 3d 789, 796, 815-16, 818-22, 827-30, 903 n.70. (D. Ariz. 2022) (finding that Arizona's prison healthcare system, which Corizon was responsible for administering between 2013 and 2019, "is plainly grossly inadequate" and discussing multiple incarcerated people who died or were seriously harmed as a direct result of Corizon's failure to provide timely and adequate health care); *Jones v. Cnty. of Kent*, Judgment, ECF No. 244, No. 1:20-cv-36, (W.D. Mich. 2022) ($6.4 million judgment in wrongful death action against Corizon for deliberate indifference to incarcerated person's alcohol withdrawal); *Pitkin v. Corizon Health, Inc.*, Judgment, ECF No. 109, No. 3:16-CV-02235-AA, (D. Or. Mar. 13, 2018) ($10 million judgment in wrongful death action against Corizon for its deliberate indifference to incarcerated person's severe, progressing, and life-threatening opioid withdrawal); *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (finding that incarcerated person had provided proof of at least a dozen instances of Corizon denying or delaying consultations, biopsies, and radiation treatment for prostate cancer over the course of almost a year); Will Tucker, *Profits vs. Prisoners: How the Largest U.S. Prison Health Care Provider Puts Lives in Danger*, Southern Poverty Law Center (Oct. 27, 2016), https://tinyurl.com/mvjmp5z4; New York City Department of Investigation, *Investigation Finds Significant Breakdowns by Corizon Health Inc., the City-Contracted Health Care Provider in the City's Jails, and a Lack of Oversight by the City Correction and Health Departments* (June 2015), (finding that Corizon's failure to screen and supervise staff "cannot be disassociated from the illegal activity and inmate deaths and injuries that have occurred"), https://tinyurl.com/32jv9aa5.

Well over a year ago, after effectuating a divisional merger under Texas law, the Debtor—which carries all or most of Corizon's tort liability—filed a Chapter 11 petition. It also secured an expansive stay of civil cases not just against itself, but also against non-Debtor affiliates who may themselves be liable for tort claims under successor liability and alter ego theories of liability. Justice for people harmed by Corizon—as well as many other creditors—ground to a halt. The Official Committee of Tort Claimants ("TCC") has now moved for interlocutory review of the denial of a motion to dismiss. *Amici* participated in this matter before the Bankruptcy Court[2] and now submit this statement in support of the immediate appellate review sought by the TCC. A prompt determination from this Court will serve the interests of tort claimants who will be disproportionally harmed by further delays in this case.

## INTERESTS OF AMICI

*Amici* are nonprofit advocacy and research organizations with decades of experience advocating for the rights of incarcerated people and vulnerable populations, including involvement in litigation relating to Corizon's failures to provide adequate healthcare. As a result of that advocacy, *amici* are familiar with the barriers that incarcerated people face in accessing the legal system. Individual organizational statements of interest are attached hereto as Exhibit 1.

---

[2] *Amici* sought leave to file two amicus briefs on behalf of pro se tort claimants. The first, filed shortly after the Chapter 11 petition was filed, explained the obstacles incarcerated people faced in accessing the legal system and identified potential due process violations. *In re Tehum*, Case No. 23-90086 (Bankr. S.D. Tex.), ECF No. 576-1. The second, filed in February 2024, expressed *amici*'s support of the then-newly formed TCC's Motion to Dismiss, which was denied on April 11, 2024 and is the subject of this appeal. *See id.* at ECF Nos. 1260, 1393-1, 1505.

# ARGUMENT

Legitimizing the Debtor's misuse of the bankruptcy system by allowing the Debtor to remain in bankruptcy has significant public policy implications. As *amici* explain below, incarcerated tort claimants stand to lose more than anyone else in this case with each passing day. First, further delay will disproportionately harm incarcerated tort claimant's likelihood of achieving any measure of justice. Second, allowing the Debtor—formerly a correctional healthcare provider—to throw its constitutional and statutory tort liability into the abyss[3] may have profound consequences in the increasingly unstable prison industry more broadly.[4] These public policy concerns are directly relevant to this court's determination of "whether there is substantial ground for a difference of opinion" as to whether the Debtor is a legitimate debtor that can avail itself of the Bankruptcy Code's protection. *See* Doc. 1525-2 (Tort Committee Notice of Appeal) at ¶¶ 84-90 (discussing legal standard for interlocutory review and summarizing argument). Immediate appellate review is warranted in this case.

---

[3] As the has TCC noted, "Tehum" means "the abyss" in Hebrew. Strikingly, the Debtor's sole director, Isaac Lefkowitz, testified that the Debtor has all the money to pay all claims in full, that many claims are illegitimate, and that the lawyers who represent incarcerated people are "crooks." *See* Oral Ruling at 31:14-17 (summarizing testimony of Issac Lefkowitz).

[4] Many companies across the prison industry are on the edge of insolvency. *See, e.g.*, Dana Floberg and Morgan Duckett, *The Slow Death of a Prison Profiteer: How Activism Brought Securus to the Brink*, The Appeal (Apr. 4, 2024), https://theappeal.org/securus-bankruptcy-prison-telecom-industry; Nichole Manna, *Former Duval Jail Medical Provider, Armor, Says it Can't Pay Millions in Debt*, The Tributary (Oct. 31, 2023), https://jaxtrib.org/2023/10/31/former-duval-jail-medical-provider-armor-says-it-cant-pay-millions-in-debt/.

## I. Further Delays Will Disproportionately Harm Incarcerated Tort Claimants

Immediate appellate review of the denial of the Motion to Dismiss can help prevent additional delay that would perpetuate inequities between various creditor classes. This case involves two distinct classes of creditors, tort claimants and commercial creditors, and further delay in resolving these proceedings will disproportionately harm tort claimants. Most tort claimants are currently and formerly incarcerated people with a variety of claims under common, statutory, and constitutional law, including, for example, claims of negligence, medical malpractice, and violations of the Eight Amendment's cruel and unusual punishment clause. Most tort claimants are unrepresented in both their civil proceedings and these bankruptcy proceedings and face unique obstacles in accessing the legal system generally. *See In re Tehum*, Case No. 23-90086 (Bankr. S.D. Tex.), ECF No. 576-1. Tort claimants' claims are predicated on the acts and omissions of Corizon Health's medical providers and require the presentation of evidence that is increasingly harder to preserve and develop as time goes on. Key fact witnesses, like medical providers and correctional staff, may no longer be employed by the medical provider or correctional facility. Medical or other relevant records may be lost. And, for those suffering from serious illness, time may simply run out. Finally, pro se claimants may be less likely to find legal representation as time goes on, in part because of the evidentiary issues described above. Without counsel, a pro se litigant's likelihood of success diminishes substantially.

## II. The Public Policy Implications of Allowing the Debtor to Remain in Bankruptcy Are Serious

A pro se tort claimant has perfectly articulated what is at stake in this case. "If we don't hold these corporations and individuals accountable now, what is going to stop these states from contracting even lower budget [correctional health] contractors now that they are shown a way out of providing constitutionally adequate medical care?" *In re Tehum*, Case No. 23-90086 (Bankr. S.D. Tex.), ECF No. 1337. This court's decision will not only affect the ability of incarcerated creditors to obtain redress for serious harms suffered at the hands of Corizon, but also will absolve Corizon of its long history of constitutional and statutory violations by inoculating Corizon's successor, YesCare. And now armed with the knowledge that it can simply repeat the maneuver the Debtor seeks to employ here, YesCare will have no incentive to provide adequate care to thousands of incarcerated people nationwide.[5] Thus, the Court's decision in this case will have far-reaching effects, potentially creating a roadmap for both YesCare and other companies to exploit some of the most vulnerable populations in this country without consequence.

These concerns are not based on improbable hypotheticals. A substantial portion of the care of incarcerated people is provided not by those responsible for providing that care—government entities—but by private companies. In 2016, it was estimated that half of all state and local jails had outsourced healthcare. Michael Fenne, *Private Equity Firms Rebrand Prison Healthcare Companies, But Care*

---

[5] Already, allegations that YesCare is failing to provide adequate medical care have surfaced. Alex Gladden, *Families, Advocates Describe Wide-Scale Medical Neglect In Alabama Prisons*, Montgomery Advertiser (Nov. 20, 2023), http://tinyurl.com/2nwv9shv.

7

*Issues Continue*, Private Equity Stakeholder Project (Nov. 2022), https://tinyurl.com/nhhu6rbm. That percentage rose to an estimate 60 percent of jails by 2020. *Id.* In fact, the Corizon successor that was assigned most assets in the divisional merger, now operating as YesCare, continues to hold a significant market share, including a billion-dollar contract with the Alabama Department of Corrections. *See* Dakin Campbell and Nicole Einbinder, *Inside a Prison Healthcare Company's Ownership Shell Game*, Business Insider (Mar. 5, 2024), https://tinyurl.com/r5bkk8p5; Michael Fenne, *YesCare Dodges Liability for Prison Conditions, Private Equity Stakeholder Project* (Oct. 2023), https://tinyurl.com/bdec5us8. There is no reason to believe that tort liabilities will not accrue at similar rates as before. By the Debtor's own admission, YesCare is not currently profitable. If true, YesCare could quickly find itself in the same position as Corizon did before it undertook a divisional merger.

As the TCC explains in its Notice of Appeal, the Debtor's use of a combination of Texas state law and the Bankruptcy Code to apply the benefits of bankruptcy to the non-debtor survivor of the divisional merger (YesCare) flies in the face of Fifth Circuit doctrine. *See e.g.*, *Bank of N.Y. Tr. Co. v. Official Unsecured Creditors Cmte. (In re Pac. Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) (holding "[i]n a variety of contexts" that discharge under the Bankruptcy Code is available only to the debtor, "not co-liable third parties"); *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986) (holding that a bankruptcy court's equitable powers do not "create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity"). The District Court should put an expeditious end to this

bad-faith Chapter 11 filing by promptly reviewing the Bankruptcy Court's denial of the motion to dismiss.

## CONCLUSION

The stakes in this case are high, and the human costs are immeasurable. Because of this, and because of the disproportional harms additional delay will impose on pro se tort claimants, this Court should exercise its discretion and grant leave to appeal the denial of the Motion to Dismiss.

Dated: May 8, 2024
Submitted,

/s/ Martin Woodward
Counsel for *Amici Curiae*

Martin Woodward
Kitner Woodward PLLC
13101 Preston Road, Suite 110-3323
Dallas, TX 75240
(214) 443-4300
martin@kitnerwoodward.com

Jaqueline Aranda Osorno*
Public Justice
1620 L St. NW, Suite 630
Washington, DC 20036
(202) 797-8600
jaosorno@publicjustice.net
*pro hac vice pending*

# EXHIBIT 1

# INTERESTS OF AMICI

*Amici* are nonprofit advocacy and research organizations with decades of experience advocating for the rights of incarcerated people and vulnerable populations, including involvement in litigation relating to Corizon's failures to provide adequate healthcare. As a result of that advocacy, *amici* are familiar with the barriers that incarcerated people face in accessing the legal system.

The **Center for Constitutional Rights** ("CCR") is a national, not-for-profit legal, educational, and advocacy organization dedicated to protecting and advancing rights guaranteed by the U.S. Constitution and international law. Founded in 1966 to represent civil rights activists in the South, CCR has litigated numerous landmark civil and human rights cases. CCR has represented numerous incarcerated people in state and federal custody across the country challenging their conditions of confinement. As such, CCR is deeply familiar with the barriers to participation in court proceedings—bankruptcy or otherwise—faced by incarcerated people and is committed to dismantling those barriers.

**Public Justice** is a national public interest legal organization that specializes in precedent-setting, socially significant civil litigation, with a focus on fighting corporate and governmental misconduct. The organization maintains an Access to Justice Project that pursues litigation and advocacy efforts to remove procedural obstacles that unduly restrict the ability of consumers, workers, and people whose

civil rights have been violated to seek redress in the civil court system. Public Justice has engaged in significant advocacy efforts to prevent abuse of the bankruptcy system to evade the civil justice system, which hinders and delays justice for survivors of corporate wrongdoing. For example, Public Justice filed an amicus brief opposing Johnson & Johnson's use of the Texas Two Step; the Third Circuit recently dismissed that bankruptcy. *In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir. 2023).

**Rights Behind Bars** (RBB) legally advocates for people in prison to live in humane conditions and contributes to a legal ecosystem in which such advocacy is more effective. RBB seeks to create a world in which people in prison do not face large structural obstacles to effectively advocating for themselves in the courts. RBB helps incarcerated people advocate for their own interests more effectively and through such advocacy push towards a world in which people in prison are treated humanely.

The **Roderick & Solange MacArthur Justice Center** ("MJC") is a not-for-profit organization founded by the family of J. Roderick MacArthur to advocate for civil rights and a fair and humane criminal legal system. As part of this mission, MJC represents incarcerated and formerly incarcerated individuals in cases concerning medical care, conditions of confinement, and access to courts. MJC has served as merits counsel, *amicus* counsel, or *amicus curiae* in numerous cases around the country related to these issues, in both state and federal courts. As such,

3

MJC has both expertise and interest in ensuring that people incarcerated in prisons and jails have sufficient due process protections in bankruptcy court proceedings.

The **Southern Center for Human Rights** ("SCHR") is a nonprofit law firm dedicated to advancing equality, dignity, and justice for people impacted by the criminal legal system. Through litigation and advocacy, SCHR has worked for over 45 years to defend the civil and human rights of incarcerated people, ensure humane conditions of confinement in jails and prisons, and end degrading law enforcement practices. In light of its experience, SCHR has a unique perspective on the issues raised in this case, including the due process rights of people in prisons and jails, and an interest in ensuring that those rights are protected in any context, including bankruptcy court.

**The UC Berkeley Center for Consumer Law & Economic Justice** is the leading law school research and advocacy center dedicated to ensuring safe, equal, and fair access to the marketplace. Through regular participation as an amicus before the United States Supreme Court, the federal courts of appeals, and state appellate courts, the Center seeks to develop and enhance economic protections for all consumers, especially those who compose particularly vulnerable segments of the population. The Center appears in this proceeding to underscore the importance of the bankruptcy process being both fair and accessible to all creditors.

**Worth Rises** is a national non-profit advocacy organization dedicated to dismantling the prison industry and ending the exploitation of those it touches. The organization is a leading expert on the prison industry and the ways it exploits and harms incarcerated people, their families, and our communities at large. It studies, documents, and organizes against the commercialization of the U.S. carceral system, including the entities that profit from incarceration and related industries. The organization also regularly engages with impacted communities and aims to ensure incarcerated people receive necessary redress when they have received substandard medical care.